USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE COMPLAINT

-of-

SAIL CHARTER NYC, LLC, as Owner of a
1922 62' Herreshoff vessel named
"VENTURA" for Exoneration from or
Limitation of Liability,

Petitioner.

1:25-cv-7812 (MKV)

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

## BACKGROUND

This action was initiated on September 19, 2025, with the filing of a Petition, [1] [ECF No. 1], in which Petitioner seeks exoneration from or limitation of liability under 46 U.S.C. §§ 30501 *et seq.* and Rule F of the Supplemental Rules.  [ECF No. 1] ¶ 1.  The liability in question is that which might arise from claims concerning an incident that occurred on a vessel docked at North Cove Marina, Hudson River, Manhattan, in October 2024.  *See* [ECF No. 1] ¶¶ 6–7.  Petitioner owns that vessel.  [ECF No. 1] ¶ 5.  Having been aboard the vessel as part of a private function, one Rick Mallette allegedly fell into the water while disembarking.  [ECF No. 1] ¶¶ 8–12.

In response to the Petition, the Court issued an order and injunction staying any litigation over this incident and initiating the claims-noticing process.  [ECF No. 6].  Thereafter, the Court received a Verified Claim and Answer, and Memorandum in Opposition, filed by Rick Mallette ("Claimant").[2]  [ECF No. 8].  Claimant argued, among other things, that admiralty jurisdiction

---

[1] Following *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, the Court here "adhere[s] to the . . . practice of using the terms 'petition' and 'petitioner.'"  752 F.3d 239, 241 n.1 (2d Cir. 2014).

[2] Another claimant, Island Global Yachting, LLC, likewise filed an Answer, Affirmative Defenses, and Verified Claim, [ECF No. 12], albeit belatedly, *see* [ECF No. 6] at 3.  That filing is not addressed in this Opinion, which concerns the Court's jurisdiction over this case.

1

does not exist in this case such that, at minimum, the injunction should be lifted and any litigation permitted to proceed. *See* [ECF No. 8-1] at 1–3, 6. The Court ordered a response on the jurisdictional issue, [ECF No. 9], which Petitioner timely filed, [ECF No. 13]. Accordingly, the question of the existence of admiralty jurisdiction is now squarely before the Court.

## **ANALYSIS**

"Although the Limitation of Liability Act provides a federal cause of action for a vessel owner seeking exoneration or limitation, it does not provide an independent foundation for federal admiralty jurisdiction. . . . Instead, the district court will only have admiralty jurisdiction to hear a petition for limitation if it already has admiralty jurisdiction over the underlying claims that the petition seeks to limit." *Tandon*, 752 F.3d at 244 (quotation omitted). In determining whether admiralty jurisdiction exists over a claim, the Court must confirm that the underlying tort "satisf[ies] conditions of both location and connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

The inquiry with respect to location is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Here, Claimant states that "[i]t is undisputed that [the tort] occurred on navigable water[,]" [ECF No. 8-1] at 2, "more specifically[,]" as the Petition puts it, "near North Cove Marina, Hudson River, Manhattan[.]" [ECF No. 1] ¶ 2 (characterizing this location as being "upon the navigable waters of the United States").[3] *See Sisson v. Ruby*, 497 U.S. 358, 362 (1990) ("This case involves a fire that began on a noncommercial vessel at a marina located on a navigable waterway."). That "[t]he

---

[3] The Court, in view of its independent obligation to ensure that subject-matter jurisdiction exists, *see, e.g.*, *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 143 (2d Cir. 2011), is not convinced by the apparent agreement of the Parties on this point. Indeed, Claimant "was disembarking at the time [of the alleged incident], which suggests that the ship was docked and therefore connected to land. However, the Court need not 'resolve the difficult question of where the underlying tort occurred' because 'even assuming *arguendo* that the location test is met, admiralty jurisdiction cannot attach because[,]'" as discussed below, "'the connection test is not met.'" *Susana v. NY Waterway*, 662 F. Supp. 3d 477, 487 (S.D.N.Y. 2023) (cleaned up, quoting *Tandon*, 752 F.3d at 248–49 (2d Cir. 2014)).

2

alleged tort here involves a vessel on navigable waters[,]" if indeed it does, would "ordinarily place [the] case within the bounds of admiralty jurisdiction." *In re Petition of Germain*, 824 F.3d 258, 270–71 (2d Cir. 2016) (citing *Grubart*, 513 U.S. at 543).  But not invariably.

Instead, the Court would still need to determine whether the underlying tort presents a "connection with maritime activity," *Grubart*, 513 U.S. at 534, sufficient to bring the case within the Court's admiralty jurisdiction.  To answer this question, the Court must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce," and "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (quotations and citations omitted).  "The first part of the connection test looks to the nature of the incident that immediately caused the underlying injury; the second part, by contrast, looks to the nature of the broader activity giving rise to that incident." *Tandon*, 752 F.3d at 250–51.

The Court begins with the second part of the analysis to note that the Court is in this case convinced that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534.  Claimant's proposed description of the activity—"a private social function hosted aboard a moored sailboat, involving drinking, mingling, and a short pleasure cruise[,]" [ECF No. 8-1] at 3—is an unduly specific rendering of the "general character" of the activity that gave rise to his injuries.  The Supreme Court has made clear that "the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson*, 497 U.S. at 364.

Accordingly, Petitioner's "description of the general character" of the activity, *Germain*, 824 F.3d at 274, is a better one: "the transport and care of passengers on a vessel on navigable

waters," [ECF No. 13] at 14.[4]  This description avoids wading into "the merits of the causation

issue[,]" *Sisson*, 497 U.S. at 365, while "generally captur[ing] the many aspects" of the activity

that arguably "gave rise to [claimant's] injury[,]" *Germain*, 824 F.3d at 274.  And the "transport

and care of passengers on a vessel on navigable waters . . . [is] substantially related to traditional

maritime activity." *Germain*, 824 F.3d at 274–75.

Nevertheless, the Petition does not satisfy the first part of the connection-with-maritime-

activity analysis insofar as the Court does not see how an incident of the type at issue here could

"realistically pose a threat to maritime commerce." *Tandon*, 752 F.3d at 249.  "[D]escribing the

incident at an intermediate level of possible generality[,]" *id.*, this case concerns "injury to a

passenger who trips and falls while disembarking a docked vessel[,]" *Susana*, 662 F. Supp. 3d at

488; *cf.* [ECF No. 13] at 9 ("[T]he general features of the type of incident here is [sic] injury to a

passenger while exiting a chartered commercial vessel.").  The only addition to the description

from *Susana* necessary here is that, in this case, the passenger allegedly fell into the water.  "This

description accurately captures the nature of the event giving rise to this suit, and the type of risks

that the incident could pose to maritime commerce," *Tandon*, 752 F.3d at 249, without being either

"too general to distinguish different cases [or] too specific to the unique facts of the particular

case[,]" *id.* at 247.[5]

Petitioner asserts that "[f]ederal admiralty courts have consistently held that injury to a

person disembarking a vessel on navigable waters has the potential to disrupt maritime

---

[4] The Court notes that the activity might also be described as "the storage and maintenance of a vessel at a marina on navigable waters[,]" *Sisson*, 497 U.S. at 365, although that description would risk eliding the fact that this is, at bottom, a personal injury case.

[5] The description does not account for Claimant's repeated emphasis on the "recreational" nature of the ship and his presence thereupon, *see, e.g.*, [ECF No. 8-1] at 2, because this facet of the incident "does not matter for purposes of admiralty tort jurisdiction." *Germain*, 824 F.3d at 271.  Instead, "[t]he federal interest in protecting maritime commerce . . . can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674–75 (1982) (emphasis original).

commerce." [ECF No. 13] at 10.  Yet, the case Petitioner cites to that effect from within this Circuit is a District of Vermont case from over a decade ago, *id.* (citing *Parker v. Malletts Bay Boat Club, Inc.*, 2010 WL 3767295 (D. Vt. Sept. 27, 2010)), which was decided prior to the most relevant Second Circuit precedents, *see Germain*; *Tandon*.  In terms of the application of those precedents to the facts here, the Court is persuaded by Judge Cronan's thoughtful analysis *Susana*.[6]

In *Susana*, a passenger tripped and fell while disembarking a docked vessel, albeit not into the water.  The court there held that such a passenger does not "immediately disrupt navigation" by "creating an obstruction to the free passage of commercial ships along navigable waterways[;]" "immediately damage nearby commercial vessels[;]" or "endanger[] the safety of the vessel and risk[] collision from others on the same waterway" by "distract[ing] . . . the crew from their duties[.]" *Susana*, 662 F. Supp. 3d at 488 (applying *Tandon*, quotations omitted).  Moreover, such an incident "implicates primarily recreational visitors, not persons engaged in maritime employment."[7]  *Id.* (applying *Tandon*, quotations omitted).

All this remains the case even when, as in this case, the passenger falls from the docked vessel into the water.[8]  *Susana* did not involve someone falling into the water, but *Tandon* itself

---

[6] The Court is not persuaded by Petitioner's attempt to distinguish *Susana* on the basis that "[t]he choice of law analysis in that case was not a jurisdictional analysis, but an analysis as to whether substantive New York or federal maritime law applied." [ECF No. 13] at 13.  The court in *Susana* was, in the relevant passage, expressly applying "the 'Grubart test[]' to determine whether federal admiralty jurisdiction exist[ed] over [the] tort claim" before the court.  *Susana*, 662 F. Supp. 3d at 487.

[7] "Where similar incidents involving different types of persons produce similar effects that have a potentially disruptive effective [sic] on maritime commerce, the type of person involved should be omitted from the incident's description." *Germain*, 824 F.3d at 272 (2d Cir. 2016).  But "injuring those who are employed in maritime commerce" is certainly an effect on maritime commerce for which a court is properly on the lookout.  *Tandon*, 752 F.3d at 250.

[8] Nor does the Supreme Court's holding in *Sisson* that "a fire that began on a noncommercial vessel at a marina located on a navigable waterway . . . has a potentially disruptive impact on maritime commerce[,]" *Sisson*, 497 U.S. at 362, alter the Court's conclusion here.  That holding—which nicely illustrates the difference between the proper objects of description in the two parts of the connection-with-maritime-activity analysis, *compare id.* at 363 ("We determine the potential impact of a given type of ***incident*** by examining its general character." (emphasis added) *with id.* at 364 ("[T]he party seeking to invoke maritime jurisdiction must show a substantial relationship between the ***activity giving rise to the incident*** and traditional maritime activity." (emphasis added) (describing the activity as "the storage and maintenance of a vessel at a marina on navigable waters[,]" *id.* at 365)—rested on the rather "[c]ertain[]" observation

5

did.  *See Tandon*, 752 F.3d at 251.  And, as the Second Circuit there concluded, "[n]ot all torts that happen on or over navigable water have the potential to disrupt commercial shipping." *Id.*  While the *Tandon* court was careful to clarify that "the class of incidents . . . consider[ed] [t]here include[d] only fights on permanent docks[,]" as opposed to fights "occurring on a vessel on navigable water[,]" *id.* at 250, the thrust of its logic was that an incident on and around a dock— including in the water of a marina—does not pose the same risks as the same incident would in open water.  *See, e.g.*, *id.* at 251 ("At worst, an incident of this sort might temporarily prevent commercial vessels from mooring at the permanent dock around which the fight occurred."), 252 ("The risks to maritime commerce posed by a rescue operation at a dock are substantially lower than the risks to maritime commerce posed by a rescue operation at sea.").

## <u>CONCLUSION</u>

For the foregoing reasons—and, specifically, because "the scope of admiralty law has little or nothing to do with the issues that are likely to appear in cases like this one[,]" *id.* at 253—the Petition is DISMISSED for lack of subject-matter jurisdiction.  The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

**Date:  February 10, 2026**
         **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

that "fire is one of the most significant hazards facing commercial vessels." *Id.* at 362.  This case involves no such hazard.